coulson 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS



AT AUSTIN



 



ON REMAND



ON MOTION FOR REHEARING



 



NO. 14,130



LAKE LBJ MUNICIPAL UTILITY DISTRICT,



 APPELLANT


vs.



BENNETT COULSON & C. A. E., INC.,



 APPELLEES


 



NO. 14,131



BENNETT COULSON,



 APPELLANT


vs.



LAKE LBJ MUNICIPAL UTILITY DISTRICT,



 APPELLEE



 



FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT



NO. 7927, HONORABLE THOMAS C. FERGUSON, JUDGE PRESIDING



 




 We grant the motions for rehearing of Lake LBJ Municipal Utility District and
Bennett Coulson and C.A.E., Inc. We therefore withdraw the opinion and judgment of August
30, 1991, and substitute this opinion.

 Bennett Coulson and C.A.E., Inc. recovered judgment on a jury's verdict in their
suit against the Lake LBJ Municipal Utility District for sums allegedly due under a written
contract to furnish the District various engineering services. (1) We have twice reversed the trial-court judgment and remanded the cause for a new trial based on errors assigned by the District;
in each instance, the Supreme Court of Texas has reversed our judgment and remanded the cause
for our further consideration. See Lake LBJ Mun. Util. Dist. v. Coulson, 692 S.W.2d 897 (Tex.
App. 1985) (Coulson I), rev'd, 734 S.W.2d 649 (Tex. 1987) (Coulson II), on remand, 771
S.W.2d 145 (Tex. App. 1988) (Coulson III), rev'd, 781 S.W.2d 594 (Tex. 1989) (Coulson IV). 
We refer the reader to these earlier opinions for a description of the controversy.

 In its original brief in this Court, the District assigned thirty-two points of error
to the trial-court judgment. The Engineer brought three cross-points as well. In its opinions, the
supreme court decided eight of those points of error. This Court decided sixteen additional points
of error. Eleven points of error remain to be decided. Because the procedural history of this case
is so complex, however, we will discuss all of the issues to a greater or lesser extent so the
reasons for our holdings will be readily apparent. 



THE JURY QUESTIONS


 In its first eight points of error, the District complains of the jury questions
submitted by the trial court. In our first opinion in this cause, we held the trial court committed
reversible error when it refused to supply in the charge, by definition, instruction, or the phrasing
of the first question, a reasonable standard of skill and diligence that would have enabled the jury
to determine whether the Engineer's plans and specifications met that standard and therefore
established his right to recover on the contract. Coulson I, 692 S.W. at 907. The supreme court
held the submitted issues "properly placed the respective burdens and fairly submitted the
respective claims of Coulson and the District." Coulson II, 734 S.W.2d at 652.

 On remand, we again reversed the judgment and remanded the cause to the trial
court based on, among other reasons, our holding that the first question constituted an
impermissible comment on the weight of the evidence. Coulson III, 771 S.W.2d at 150-51. The
supreme court again reversed our judgment, holding the question did not impermissibly comment
on the weight of the evidence. Coulson IV, 781 S.W.2d at 597.

 It is our understanding that the supreme court's two opinions dispose of the first
eight points of error. In those points, the District complains the trial court erred by (1) submitting
question number one and (2) omitting the District's requested questions on whether the Engineer
substantially complied with the terms of the contract and performed in a good-and-workmanlike
manner. We believe the supreme court rejected these claims by its holding that the submitted
issues "properly placed the respective burdens and fairly submitted the respective claims" of the
parties. We conclude, therefore, that the supreme court overruled the District's first eight points
of error.

 In its twenty-ninth, thirtieth and thirty-first points of error, the District complains
the trial court also erred by refusing to submit requested questions concerning work for which the
District had already paid the Engineer. According to the District, the trial court erred in refusing
to submit questions by which the District sought to establish that: (1) the Engineer failed to
perform the contract in a good-and-workmanlike manner with respect to the projects for which
the Engineer had been paid; (2) the payments previously made to the Engineer were made in
reliance upon the Engineer's false representations that his plans substantially complied with the
contractual requirements; and (3) the value of plans and specifications, for which the Engineer
had previously been paid by the District, was unreasonably low.

 We reject these contentions. In its first opinion, the supreme court said, "We are
unable to discern any real differences between the District's claim that Coulson's efforts were not
good and workmanlike and did not meet the standards of reasonable engineering practice and its
claim that Coulson was negligent in his performance of professional services." Coulson II, 734
S.W.2d at 651. The supreme court held that question number six, as submitted, resolved the
question whether the Engineer was negligent in providing plans and specifications. It follows that
question number six also resolved the question whether the Engineer performed in a good-and-workmanlike manner.

 The District argues that its good-and-workmanlike-manner argument survives as
a separate issue, despite the supreme court's pronouncement in Coulson II, because the District
also filed a counterclaim against the Engineer to recover amounts already paid. We believe this
distinction is unimportant. On appeal, the District's only assignment of error with respect to the
counterclaim is that the trial court did not submit the requested questions. The District does not
attack the jury's answers by legal- or factual-sufficiency points. In light of our holding that
question number six properly presented the District's theory of the case, the issue whether the
question represented the District's defense or its counterclaim is irrelevant. Question number six
placed the burden of proof on the District and did not distinguish between plans for which the
District had previously paid the Engineer and those for which the Engineer had received no
payment. Therefore, we believe question number six resolved the question whether the Engineer
performed in a good-and-workmanlike manner with respect to both the Engineer's claim against
the District and the District's counterclaim against the Engineer.

 Question number eight asked the jury whether the Engineer designed and planned
part of the water, sewer and drainage systems in excess of the reasonable needs of the District. 
It also asked whether the Engineer in bad faith misrepresented the need for these systems, and,
if so, whether the District relied on these misrepresentations. The jury answered "No." We
believe this question sufficiently presented the District's complaints that (1) it detrimentally relied
on the Engineer's false representations that his plans substantially complied with the contract
requirements and (2) the value of plans and specifications for which the Engineer had previously
been paid by the District was unreasonably low. We overrule the District's twenty-ninth,
thirtieth, and thirty-first points of error.



SUFFICIENCY OF THE EVIDENCE


 In its ninth point of error, the District contends the trial court erred in overruling
the District's motion for new trial because the evidence is factually insufficient to support a
finding that the Engineer substantially performed the contract. Question number one asked as
follows:


 Do you find from a preponderance of the evidence that during the time in question
[the Engineer] furnished the [District] with sufficient plans and specifications for
construction of a water system, a sanitary sewer system and drainage for the needs
of such District, and to secure approvals from appropriate governmental agencies,
under the circumstances then existing?


 In our first opinion in the cause, we held the trial court committed reversible error
when it refused to supply in the charge a reasonable standard of skill and diligence that would
have enabled the jury to determine whether the Engineer's plans and specifications met that
standard and thus established his right to recover on the contract. Coulson I, 692 S.W.2d at 907. 
In that connection, the District had complained the charge omitted the controlling or ultimate
question of fact: whether the plans and specifications were done "in a good and workmanlike
manner" or "in accordance with appropriate standards of engineering practice." In reference to
this complaint, we said, "The evidence adduced at trial would support a finding either way on the
issue of whether the Engineer's plans and specifications were sufficient to meet either standard
of skill and diligence suggested by the standard." Id. at 904. Nevertheless, the supreme court
remanded the cause to this Court for the express purpose of determining whether the evidence was
sufficient to support the jury's finding. Coulson IV, 781 S.W.2d at 597.

 Contrary to the supreme court's view, we believe we did explicitly decide the
evidence was factually sufficient to support the jury's affirmative answer to question number one,
although we did not detail the evidence suggesting that conclusion. It is our understanding that
we were not obliged to do so:


 In order that [the supreme court] may . . . determine if a correct standard of
review of factual insufficiency points has been utilized, courts of appeals, when
reversing on insufficiency grounds, should, in their opinions, detail the evidence
relevant to the issue in consideration and clearly state why the jury's finding is
factually insufficient . . . . Further, those courts, in their opinions, should state
in what regard the contrary evidence greatly outweighs the evidence in support of
the verdict.


Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986) (emphasis added). Because we were
not "reversing on insufficiency grounds" the trial-court judgment, we concluded there was no
necessity for discussing in detail the evidence pertinent to question number one.

 To finally dispose of the issue, however, we will examine the District's factual-sufficiency point of error now. When reviewing a jury verdict to determine the factual sufficiency
of the evidence, we must consider and weigh all the evidence, and should set aside the judgment
only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). To give content to the rather vague
standard of "clearly wrong and unjust," we look to the practical suggestions set out in W. St. John
Garwood, The Question of Insufficient Evidence on Appeal, 30 Tex. L. Rev. 803 (1952): In
reviewing a complaint that the evidence is insufficient to support a jury's verdict, the reviewing
court must first ask whether it would reach the same verdict if it were the trier of fact. Id. at 811-12. If so, the verdict stands. If the answer is "No," the court should ask whether the jury must
have been actuated by prejudice, sympathy, or some other incorrect motive, and, if so, why? Id.

 We cannot say that we would have reached a different result than did the jury,
based on the evidence adduced at trial and shown in our record. Both the Engineer and the
District produced expert testimony on the issue whether the plans and specifications sufficiently
complied with the contract. The District witnesses testified that the Engineer's plans were so
general as to be virtually worthless to potential bidders; they also testified that the Engineer
improperly designed some of the facilities. The Engineer's witnesses testified that the Engineer's
plans were adequate, and, in fact, were innovative and economical. It is within the province of
the jury to determine the credibility of the witnesses and the weight to be given their testimony. 
Rego Co. v. Brannon, 682 S.W.2d 677, 680 (Tex. App. 1984, writ ref'd n.r.e.). We hold the
evidence is not factually insufficient.

 In the District's supplemental brief in this Court, it acknowledges our statement
from Coulson I: "The evidence adduced at trial would support a finding either way on the issue
of whether the Engineer's plans and specifications were sufficient to meet either standard of skill
and diligence suggested by the District." Therefore, the brief concedes, the District "will not now
try to argue that the evidence was factually insufficient to support a finding that the Engineer met
the proper standard of care."

 Instead, the District argues under its insufficiency point that the quality and quantity
of the evidence adduced will not allow a reasonable fact finder to conclude that the Engineer's
plans and specifications were sufficient "for construction" of the planned structures, even though
the evidence would permit the fact finder to conclude that the plans and specifications met a good-and-workmanlike standard or some other implied standard. The words "for construction" are
taken from the language of question number one.

 The District reasons as follows: Certain evidence in the record shows that the
Engineer prepared his plans and specifications based upon a master plan that had been prepared
by a firm of landscape architects. The master plan was subsequently changed, but the Engineer's
plans and specifications were not changed to conform to these changes in the master plan. 
Therefore, any construction work could not be done according to the Engineer's plans and
specifications alone, but only under the personal supervision of the Engineer in the construction
phase as he adjusted the plans and specifications to meet the changes in the master plan. Thus,
the evidence pertaining to question number one may be viewed as "sufficient" to support the jury's
finding only on a theory that the District bound itself to employ the Engineer in the construction
phase, if and when the bonds were sold. But this interpretation of the parties' contract is
impermissible because such a contract would be against public policy. See City of Big Spring v.
Ward, 169 S.W.2d 151, 154 (Tex. 1943). Consequently, one may interpret the parties' contract
to mean only that they intended that the Engineer would supply plans and specifications that were
sufficient in themselves to permit construction according to the master plan. The District argues
that the evidence is overwhelming that this was not done, and in consequence the evidence is
insufficient to permit the jury to find that the Engineer supplied the District with sufficient plans
and specifications for construction. (2)

 The argument is able but we must reject it under the previous opinions of the
supreme court in this cause. In its first opinion, the supreme court held expressly that questions
one and six "properly placed the respective burdens and fairly submitted the respective claims of
[the Engineer] and the District." Coulson II, 734 S.W.2d at 652. We have quoted above the
terms of Question Number One, submitting the Engineer's claim that he had performed his
contract and was, therefore, entitled to payment. Question number six, on the other hand, asked
the jury as follows: "Do you find from a preponderance of the evidence that [the Engineer] was
negligent in failing, if it did, to furnish adequate plans and specifications to obtain reasonable
competitive bid prices for the construction work . . ., proximately causing higher costs for such
construction to the District?" The jury answered, "No."

 In holding that questions one and six fairly presented the parties' respective claims,
the supreme court noted expressly that it agreed with the Engineer's argument "that once he
proves compliance with the express requirements of the contract, he is entitled to a presumption
that the work performed was `good and workmanlike' and not negligently performed until the
contrary is proven" by the District.

 It appears to us that question number six presented the District's theory that the
Engineer's plans and specifications did not comport with the contract because they would not, in
and of themselves, provide a sufficient guide for construction. The evidence is undisputed that
the Engineer complied with the contract in the sense, at least, of furnishing a set of plans and
specifications as expressly required by the contract. If they were insufficient in their particulars
to permit construction thereunder, that is a matter lying within the scope of question number six. 
We overrule the District's ninth point of error.



COMPUTATION OF COSTS


 In points of error ten through fourteen, the District complains the trial court erred
in allowing the Engineer to use 1979 estimates of competitive-bid costs in calculating his
compensation. We sustain these points of error for the reasons set out in Coulson III, 771 S.W.2d
at 153-54. (3)

FEE PERCENTAGES


 In points of error seventeen through twenty, the District complains the trial court
erred by awarding the Engineer 100% of the fees specified in the contract because the District
terminated the Engineer's employment before the projects were completed. We agree, and sustain
the District's points of error seventeen through twenty for the reasons set out in Coulson III, 771
S.W.2d at 151-53. Both parties have assailed footnote two of Coulson III, however, arguing that
it incorrectly limits the amount in controversy. We therefore do not confine the district court's
determination of the amount in controversy to the amount stated in that footnote.



HORSESHOE BAY WEST PAYMENTS


 In its twenty-first point of error, the District contends the trial court erred in
awarding fees to the Engineer for engineering services related to projects in Horseshoe Bay West. 
The District argues as follows: The contract, as amended, authorized the Engineer to prepare
plans and specifications for the area as it existed in 1973; (4) the District did not annex Horseshoe
Bay West until 1976, however, so the contract did not provide for payment for services rendered
by the Engineer for Horseshoe Bay West; because the Engineer sued only on the contract, and not
in quantum meruit or implied contract, there were no pleadings to support a recovery for services
rendered with respect to Horseshoe Bay West.

 The original contract provided that the Engineer was "to handle all future
engineering matters during the life of this contract . . . for the entire District." The contract
therefore contemplated that the Engineer might be required to provide services that were not
defined in the original or amended contract. After the annexation of Horseshoe Bay West, it
became a part of "the entire District" and came within the scope of the contract.

 When parties to a contract make a valid modification of their contract and exchange
consideration, the terms of the latest contract control. INA v. Leonard, 714 S.W.2d 414, 416
(Tex. App. 1986, writ ref'd n.r.e.). The 1973 amendment provided that the Engineer would
provide engineering services for the area described in an appendix to that agreement. It did not,
however, provide that the area specified in the appendix constituted the only area subject to the
contract. From the language in the 1973 amendment we cannot infer that the parties meant to
nullify the broader language in the earlier contract. 

 We hold that the Engineer properly pleaded to recover fees for the Horseshoe Bay
West plans and specifications. We overrule the twenty-first point of error brought by the District.

PREJUDGMENT INTEREST


 In its twenty-second point of error, the District contends the trial court erred by
awarding the Engineer prejudgment interest from September 23, 1979, to the date of trial. 
According to the parties' agreement, the Engineer was due payment on September 23, 1979, for
certain elements of his design work. The District argues, however, that the contract amount was
not ascertainable on September 23, 1979, and therefore prejudgment interest did not begin
accruing until the Engineer provided an estimate of construction prices. (5) According to the
District, interest did not begin to run on the estimate amounts until January 3, 1980, because the
Engineer first provided cost estimates on December 3, 1979. (6) See Tex. Rev. Civ. Stat. Ann. art.
5069-1.03 (1987) (providing that a party is entitled to six-percent interest on contracts
"ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time
when the sum is due and payable").

 A sum is ascertainable when the measure of recovery, although not necessarily the
amount of recovery, is fixed by conditions existing at the time of injury. Commonwealth Lloyd's
Ins. Co. v. Thomas, 678 S.W.2d 278, 297 (Tex. App. 1984, writ ref'd n.r.e.). The contract set
the Engineer's fee as a percentage of construction costs. To the extent the parties knew what the
costs were for completed work, we believe the District could compute the amounts due and
payable from the contract percentage and the amount of construction costs. See USX Corp. v.
Union Pac. Resources Co., 753 S.W.2d 845, 857 (Tex. App. 1988, no writ) (stating that the sum
payable was ascertainable when the contract fixed a measure of damages as the prevailing price
in cents per pound of cumene); see also La Sara Grain Co. v. First Nat'l Bank, 673 S.W.2d 558,
567 (Tex. 1984) (stating that the requirement that a contract set out a sum payable is liberally
construed). Therefore, we reject the District's complaint that the trial court erred in assessing
interest from September 1979 on those amounts arising from completed construction work.

 If there were other amounts that were not ascertainable at that time, we believe any
error committed by the trial court was harmless. Since the District first presented this point of
error to this Court, the supreme court has held that, when the amount of damages is not
ascertainable from the face of the contract, the interest rate set out in article 5069-1.05 applies. 
Perry Roofing Co. v. Olcott, 744 S.W.2d 929, 930-31 (Tex. 1988). Perry Roofing applies to all
cases "in the judicial process" at the time it was decided, which means that the rule applies to this
case. Id. at 931. When the contract does not specify a rate, the minimum interest rate is ten
percent. Tex. Rev. Civ. Stat. Ann. art. 5069-1.05(2) (Supp. 1992). Therefore, we believe the
District suffered no harm: Either it accepts the six-percent rate assessed from September 23,
1979, or, based on its theory of unascertained sums, it is liable for at least ten-percent interest on
those unascertained sums from January 3, 1980, until the date of judgment. We conclude the
judgment awarded the Engineer the lesser of the two amounts. See Tex. R. App. P. Ann. 81(b)
(Pamph. 1992). We overrule the twenty-second point of error.

 In its twenty-third point of error, the District argues that, by the terms of the
contract, certain fees were not due and payable until five years after the Texas Water Commission
approved the bonds. The Water Commission had not approved the bonds when the Engineer filed
this suit and the five-year period had not elapsed by the time the trial court rendered judgment in
this case. Consequently, the District argues, the fees were not yet due and payable at the time of
the judgment, and so the court below erred by awarding the Engineer prejudgment interest on
those fees. We disagree with this reasoning.

 The District breached the contract on April 12, 1979, by notifying the Engineer that
it would not perform its contractual obligations. See Mar-Len, Inc. v. Gorman-Rupp Co., 795
S.W.2d 880, 887 (Tex. App. 1990, writ denied). This action constituted an anticipatory
repudiation of the contract, thereby allowing the Engineer to elect among various remedies. See
Dunn v. Reliance Life & Accident Ins. Co., 405 S.W.2d 389, 391 (Tex. Civ. App. 1966, writ
ref'd n.r.e.). The Engineer did not sue immediately, however; instead, he chose to wait until
after the first bond payment was due in September 1979. The District did not pay the Engineer
at that time, and the Engineer sued in February 1980. In his suit, the Engineer prayed for
recovery of those amounts due on September 20, 1979, as well as for recovery of other amounts
due after that date. The District contends the Engineer had no right to seek recovery for those
amounts which were not yet due under the contract.

 When a party who is obligated by a contract to make future payments of money to
another repudiates absolutely the obligation, without excuse, the obligee is entitled to maintain at
once an action for damages for the entire breach. Taylor Publishing Co. v. Systems Mktg., Inc.,
686 S.W.2d 213, 217 (Tex. App. 1984, writ ref'd n.r.e.); see Universal Life & Accident Co. v.
Sanders, 102 S.W.2d 405, 406 (Tex. 1937). The Engineer was therefore entitled to sue for the
entire amount owed him, regardless of whether the five-year period had elapsed. The interest on
that amount accrued from the date the District breached the contract, April 12, 1979. See CKB
& Assocs., Inc. v. Moore McCormack Petroleum, Inc., 809 S.W.2d 577, 587 (Tex. App. 1991,
writ denied) (stating that prejudgment interest begins accruing on the date of the breach of
contract). Because the trial court awarded prejudgment interest from September 23, 1979, the
District suffered no harm from the trial court's action. See Tex. R. App. P. Ann. 81(b) (Pamph.
1992). We overrule the twenty-third point of error.



ISSUANCE OF WRIT OF MANDAMUS


 In its twenty-fourth, twenty-fifth, twenty-sixth and twenty-seventh points of error,
the District contends the trial court erred by granting the Engineer a writ of mandamus ordering
the District to take certain actions with respect to payment of the judgment. We sustain these
points of error for the reasons set out in Coulson III, 771 S.W.2d at 154-57. 



CREATION FEE


 In its twenty-eighth point of error, the District contends the trial court erred in
failing to award the District a $120,000 offset because the contractual provisions allowing for the
"creation fee" payments to the Engineer were void as a matter of law. We sustain this point of
error for the reasons set out in Coulson III, 771 S.W.2d at 157-59. We also overrule the
Engineer's first two cross-points of error, as we did in the earlier opinion. See id. at 159.



RETENTION OF OVERPAYMENT


 In its final point of error, the District complains the trial court erred in awarding
the Engineer additional fees for the design of facilities known as "Chaney Change Order Number
One for Horseshoe Bay South, Mobile Home Area." The District contends the evidence
conclusively established that the Engineer had already been paid the design fees due for that area. 
The record reflects that the Engineer estimated the construction costs for the mobile-home area
at $307,315. Chaney Construction Company submitted the low bid of $260,300.58 to construct
facilities in the area. The District paid the Engineer a fee based on a percentage of the higher
amount, and now asserts that it should be credited with the payment.

 The Engineer responds with two arguments. First, he justifies the fee he received
by arguing that it represented compensation for the District's use of his plans to construct facilities
added by change order to the contract. (7)
 We do not believe this argument is responsive. The
District does not contend the change order was unnecessary and that it should not have to pay for
the plans prepared for the area specified in the change order. We understand the District to argue
that assessing an additional fee was error because the trial court should have offset the fee
attributable to the change order by the amount the Engineer had been overpaid for his original
plans.

 The Engineer's second response is the District deleted certain items from the plans
before submitting them for bids from contractors, thereby insuring that the bid amount would be
lower than the estimated amount. The Engineer argues that he is entitled to receive compensation
for designing facilities, even if the District deleted items from the plans before or during
construction. 

 The contract provided: "The cost of construction for application on fee percentage
shall be based upon the total competitive bid cost. If competitive bids are not obtained, then the
. . . Engineer's estimate of reasonable competitive construction bid prices shall be used to
determine the construction cost and the applicable percentage fee." The District obtained a
competitive bid for the amount of $260,300.58. Thus, the issue presented is whether the Engineer
can recover based on his estimate of costs, instead of on competitive bid costs, because the
District unilaterally deleted certain items from the Engineer's plans before submitting the plans
to prospective bidders.

 We believe that in absence of a rule of law or a contract provision forbidding the
District from deleting items from the plans and then accepting bids based on the altered plans, the
Engineer was contractually limited to a fee based on a percentage of the bid amount. The
Engineer cites no authority for his assertion that he was entitled to a percentage based on his
estimate regardless of the District's alteration of the plans, and we have found none.

 We hold that the trial court erred in failing to offset the amount due the Engineer
for the Chaney change order number one by the amount overpaid to him for the mobile-home
area. We sustain the District's thirty-second point of error.



ATTORNEY'S FEES


 In response to question number five, the jury found the Engineer's reasonable
attorney's fees were $42,000 for the trial-court proceedings, $25,000 if the case was appealed to
the court of appeals, and an additional $8000 if the case was appealed to the supreme court. On
the District's motion, the trial court set aside these findings as immaterial because it determined
that the District was a public corporation and therefore not subject to liability for attorney's fees. 
The Engineer complains in his third cross-point that the trial court erred by failing to award him
attorney's fees. 

 The District responds that it is not liable for the Engineer's attorney's fees because
no statute provides for recovery of attorney's fees against the District. (8) Attorney's fees are
recoverable only when there is an explicit contractual or statutory basis for recovery; the
"necessary statutory basis for an award of attorney's fees may not be supplied by implication." 
Knebel v. Capital Nat'l Bank, 518 S.W.2d 795, 804 (Tex. 1974); see also Texas Dep't of Human
Servs. v. Methodist Retirement Servs., Inc., 763 S.W.2d 613, 614 (Tex. App. 1989, no writ).

 At the time of the trial in this cause, a party's entitlement to recovery of attorney's
fees was governed by article 2226, which provided that "[a]ny person, corporation, partnership,
or other legal entity having a valid claim against a person or corporation for . . . suits founded
on oral or written contracts . . . may, if represented by an attorney, . . . recover, in addition to
his claim and costs, a reasonable amount as attorney's fees." 1979 Tex. Gen. Laws, ch. 314, § 1,
at 718 (Tex. Rev. Civ. Stat. Ann. art. 2226, since repealed and codified as amended at Tex. Civ.
Prac. & Rem. Code Ann. § 38.001 (1986)) (emphasis added). The legislature also suggested that
the statute be liberally construed. Id. The Engineer contends a liberal construction of article 2226
dictates that he receive attorney's fees.

 Article 2226 granted four classes of litigants a right to recover attorney's fees: 
persons, corporations, partnerships, and "other legal entities." Only two of these classes were
subject to liability for attorney's fees--persons and corporations. The District argues that if the
legislature intended to bring governmental units within the attorney's fees statute at all, it did so
by adding the phrase "other legal entities" instead of including governmental units within the term
"persons" or "corporations." This interpretation, of course, allows governmental units to recover
attorney's fees under article 2226 without a corresponding liability for attorney's fees under that
statute.

 The Engineer contends the foregoing construction of the statute is (1) incorrect
because the legislature intended to include a municipal utility district within the definition of
"person" or "corporation," or (2) unconstitutional under the Fourteenth Amendment because
equality must exist between the class entitled to recover and the class subject to recovery. See
U.S. Const. amend. XIV, § 2. We will address each of these contentions.

Status of Municipal Utility District


 The Engineer is entitled to recover attorney's fees under article 2226 if the District
falls within the definition of "person" or "corporation." We hold it does not.

Meaning of "Person"


 First, we do not believe the word "person" as used in article 2226 includes a
governmental unit. The successor to article 2226 is section 38.001 of the Civil Practice and
Remedies Code, which provides that "[a] person may recover reasonable attorney's fees from an
individual or corporation . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (1988) (emphasis
added). Although the codification of the attorney's-fees statute changed the class subject to
recovery of attorney's fees from "a person or corporation" to "an individual or corporation," the
Act codifying the attorney's fees statute was "intended as a recodification only, and no substantive
change in the law" was intended. 1985 Tex. Gen. Laws, ch. 959, § 10, at 3322. (9)
 Therefore, we
conclude cases construing section 38.001 apply as well to article 2226. Construing
section 38.001, this Court has held that neither the state nor a subdivision of the state is an
"individual" subject to liability for attorney's fees. State v. Bodisch, 775 S.W.2d 73, 75 (Tex.
App. 1989, writ denied). Because "person" in article 2226 corresponds to "individual" in section
38.001, we conclude that under Bodisch a governmental unit is not a "person" under article 2226. 
Another court of appeals has held that a governmental unit is not a "person" within the meaning
of article 2226. See Commissioners Court v. Rodgers, 691 S.W.2d 753, 757 (Tex. App. 1985,
no writ) ("A liberal interpretation of [article 2226] does not authorize us to expand the meaning
of `person' obviously used in [the] article in accordance with its commonly understood meaning
of `an individual human being' to include a county or commissioners court.") (footnote omitted).

 We recognize that one court of appeals has held a governmental entity is a "person"
within the meaning of article 2226 and is therefore liable for attorney's fees in a breach-of-contract action. Wickersham Ford, Inc. v. Orange County, 701 S.W.2d 344, 349 (Tex. App.
1985, no writ). We decline to follow Wickersham Ford because we believe the reasoning of the
court of appeals is flawed. The court ignored the plain language of the statute when it held that
a political subdivision of the state should not be able to claim the benefits of article 2226 without
also exposing itself to liability for attorney's fees. Wickersham Ford, 701 S.W.2d at 348. The
statute, which was identical to the version being applied in the present case, explicitly created
dissimilar classes: It allowed persons, corporations, partnerships and other legal entities to
recover attorney's fees, but exposed only persons and corporations to liability for attorney's fees. 
If the view adopted by the Wickersham Ford court were correct, "partnerships and other legal
entities" would be meaningless. We may not adopt such a construction. See Ex parte Pruitt, 551
S.W.2d 706, 709 (Tex. 1977) ("Statutes should be read as a whole and construed to give meaning
and purpose to every part."). Moreover, the Wickersham Ford court misread the primary case
it relied on, Garwood Irrigation Co. v. Lower Colorado River Authority, 387 S.W.2d 746 (Tex.
Civ. App. 1965, writ ref'd n.r.e.). In Garwood Irrigation, the governmental subdivision was the
party seeking to recover attorney's fees, not the party resisting recovery. Therefore, we decline
to follow the reasoning in Wickersham Ford.

Meaning of "Corporation"


 The Engineer argues that, because article 2226 imposes liability for attorney's fees
on a municipal corporation, the trial court erred by denying him attorney's fees. The Engineer's
argument assumes, of course, that the District is a municipal corporation; we believe this is a
doubtful assumption. (10) We need not decide explicitly whether the District is a municipal
corporation outside the context of governmental immunity, however, because we do not believe
the Engineer is entitled to recover attorney's fees even if we indulge his assumption that the
District is a municipal corporation.

 The Engineer can recover attorney's fees under article 2226 only if the legislature
intended to include in the word "corporation" a governmental unit performing governmental
functions. (11) See Gates v. City of Dallas, 704 S.W.2d 737, 740 (Tex. 1986). Without a clear
indication of legislative intent that the word "corporation" include the District, the Engineer's
argument must fail. See Knebel, 518 S.W.2d at 804.

 To determine the legislature's intended meaning of the word "corporation," we look
to the law existing when the disputed version of the statute was enacted. In the context of an
antitrust statute, the supreme court stated in 1942 that "as a general rule the word `corporation'
is construed to apply only to private corporations and does not include municipal corporations,
unless the statute expressly so provides." State v. Central Power & Light Co., 161 S.W.2d 766,
768 (Tex. 1942). Subsequent decisions applied this rule to article 2226. See, e.g., Willis v. City
of Lubbock, 385 S.W.2d 617, 618 (Tex. Civ. App. 1965, writ ref'd n.r.e.); City of Houston v.
L.J. Fuller, Inc., 311 S.W.2d 285, 291 (Tex. Civ. App. 1958, no writ). The legislature is
presumed to have been aware of this judicial construction of the word "corporation" when it
reenacted article 2226 in 1979. See McBride v. Clayton, 166 S.W.2d 125, 128 (Tex. 1942)
(presuming that in using a particular term the legislature intended it to mean what courts had
theretofore said it meant). We infer, then, that the legislature intended "corporation" to apply
only to private corporations.

 In 1986 the supreme court analyzed article 2226 and expanded the meaning of the
word "corporation" to include a municipality. See Gates, 704 S.W.2d at 740. (12) The court,
however, based its decision on the home-rule municipality's broad powers of self-government,
factors not applicable here. The District is a conservation and reclamation district organized and
existing under authority of article XVI, section 59 of the Texas Constitution and created pursuant
to the provisions of chapter 54 of the Water Code; therefore, it constitutes a political subdivision
of the state and operates as a governmental agency performing exclusively governmental
functions. See Clear Lake City Water Auth. v. Clear Lake Util. Co., 549 S.W.2d 385, 391 (Tex.
1977); Dillard v. Austin Indep. Sch. Dist., 806 S.W.2d 589, 596 (Tex. App. 1991, writ denied)
(only municipalities possess both governmental and proprietary functions); see also Tex. Water
Code Ann. § 54.119(a) (1972); cf. Bennett v. Brown County Water Improvement District No. 1,
272 S.W.2d 498, 502 (Tex. 1954) (applying the law governing counties, rather than cities, to
water improvement district). Because the District is not a municipality performing proprietary
functions, Gates does not control the case at bar. 

 By negative implication, however, Gates leads to the conclusion that article 2226
does not impose liability for attorney's fees on a governmental unit performing governmental
functions. The court stated that article 2226 "places no limitation on the broad powers of self-government of a home rule municipal corporation when acting in a proprietary capacity." Gates,
704 S.W.2d at 740. This implies that a governmental subdivision performing governmental
functions is not subject to the same analysis. Because Gates provides no authority for the
assessment of attorney's fees against a governmental subdivision performing governmental
functions and because the statute provides no explicit authority for the assessment of attorney's
fees, we cannot conclude the legislature intended the word "corporation" in article 2226 to include
the District. See City of Houston v. Lyons Realty, Ltd., 710 S.W.2d 625, 630 (Tex. App. 1986,
no writ) (denying attorney's fees to party with claim against municipal utility district because
district engaged in governmental rather than proprietary functions).

 We recognize that the court in Gates discounted the broad rule of Central Power,
stating that a court seeking to ascertain legislative intent should instead consider "the old law, the
evil, and the remedy." Gates, 704 S.W.2d at 740 (quoting Tex. Gov't Code Ann. § 312.005
(1988)). In Gates, however, the court applied the provisions of article 2226 to the municipality
just as if it had been a private citizen. Id. at 739. Because the City of Dallas in Gates was
performing a proprietary function and therefore stood on the same footing as a private citizen, the
court justified its decision with the same policy rationale it would apply to private citizens--to
encourage contracting parties to pay their debts and to discourage litigation. Id. That policy has
never applied to a governmental unit performing governmental functions. Even when a
governmental unit performing governmental functions would clearly be liable if it were a private
citizen, the claimant must still point to a statute waiving immunity from suit or obtain from the
legislature consent to suit and to liability. Therefore, although the evil is the same, the remedy
differs when the party subject to recovery is a governmental unit performing governmental
functions.

 Moreover, we find nothing in the "old law" to support recovery of attorney's fees
against a governmental unit performing governmental functions. When the legislature first
enacted an attorney's fee statute in 1909, (13) governmental units performing governmental functions
enjoyed immunity from suit and from liability for actual damages, as they do today. See City of
Galveston v. Posnainsky, 62 Tex. 118, 127-28 (1884). It follows that, if a governmental entity
enjoyed immunity from suit, it enjoyed immunity from liability for attorney's fees as well. This
remained the state of the law in 1979, when the legislature enacted the version of article 2226 at
issue here. See 1979 Tex. Gen. Laws, ch. 314, § 1, at 718 (since repealed and codified as
amended at Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (1986)). We find nothing in the statute
or the cases interpreting the statute to suggest that the legislature intended to change the state of
the law to hold a governmental unit performing governmental functions liable for attorney's fees,
and we are not free to impute such an intent. (14) See Knebel, 518 S.W.2d at 804. Nor does the
legislature's directive that the statute be liberally construed dictate a broader construction. See
First City Bank--Farmers Branch, Texas v. Guex, 677 S.W.2d 25, 30 (Tex. 1984) ("[A]n award
of attorney's fees may not be supplied by implication but must be provided for by the express
terms of the statute in question.").

 This Court held in Bodisch that neither the State nor an agency of the State is a
corporation as that term is used in section 38.001. Bodisch, 775 S.W.2d at 75; see also
Washington v. Walker County, 708 S.W.2d 493, 497 (Tex. App. 1986, writ ref'd n.r.e.) (holding
that a county and its officials, "in their official capacities, are not a `corporation' under the
ordinary meaning of the term"). We see no reason to apply a different rule in cases applying
article 2226. 

 We hold the District is not a corporation within the meaning of article 2226;
therefore, the necessary statutory authority to recover attorney's fees against the District is
lacking. See Bodisch, 775 S.W.2d at 75. 



 Constitutional Analysis


 The Engineer also argues that article 2226 violates the equal-protection guarantee
of the Fourteenth Amendment if it allows a governmental unit to recover attorney's fees from an
private party, while forbidding a private party to recover attorney's fees from the governmental
unit. In effect, the Engineer contends the class entitled to recover attorney's fees must be identical
to the class subject to liability for attorney's fees, or an unconstitutional classification results. To
avoid such a classification, the Engineer argues, we should construe article 2226 in such a way
as to infer a legislative intent to include a governmental unit within the meaning of "person" or
"corporation."

 A careful reading of article 2226 indicates that the legislature could not have
intended that the class entitled to recover be identical to the class subject to recovery. The class
entitled to recover included "persons, corporations, partnerships or other legal entities." The class
subject to liability consisted of only persons and corporations. If these classes were meant to be
identical, "partnerships or other legal entities" would be superfluous. A court must give effect
to all the words of a statute and not treat any statutory language as surplusage. Chevron Corp.
v. Redmon, 745 S.W.2d 314, 316 (Tex. 1987). We conclude the legislature did not intend for the
classes to be identical.

 The next question, then, is whether article 2226 is unconstitutional as written. The
Engineer does not contend that any fundamental interest or suspect class is involved. Therefore,
the applicable standard is whether the statutory classification and different treatment bear a
"rational relationship" to a legitimate state interest which the statute was designed to further. 
Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307 (1976). We may not overturn the
statute unless "the varying treatment of different groups or persons is so unrelated to the
achievement of any combination of legitimate purposes that we can only conclude the legislature's
actions were irrational." Massachusetts Indem. & Life Ins. Co. v. Texas State Bd. of Ins., 685
S.W.2d 104, 110 (Tex. App. 1985, no writ) (quoting Vance v. Bradley, 440 U.S. 93, 108
(1979)).

 The Engineer argues, "There is no conceivable rational basis to support allowance
of attorney's fees to a successful governmental entity pursuing a contract claim yet prevent
recovery against such an entity in favor of others on identical claims." We disagree. We find a
rational basis for the legislature's creation of incongruent classes in article 2226. Presumably,
the legislature intended to preserve the funds of the state. See Tarrant County Hosp. Dist. v. Ray,
712 S.W.2d 271, 173 (Tex. App. 1986, writ ref'd n.r.e.). Were this not a legitimate state
interest, the entire doctrine of governmental immunity would be constitutionally invalid.

 Rejecting an equal-protection attack on the predecessor statute to article 2226, the
United States Supreme Court said:


[T]he 14th Amendment does not require that state laws shall be perfect; and we
cannot judicially denounce this act as based upon arbitrary distinctions, in view of
the wide discretion that must necessarily reside in a state legislature about resorting
to classification when establishing regulations for the welfare of those for whom
they legislate.



Missouri, K. & T. Ry v. Cade, 233 U.S. 642, 650 (1914); see also McGowan v. Maryland, 366
U.S. 420, 426 (1961) (stating that state legislatures are presumed to have acted within their
constitutional power even though their laws create some unequal distinctions). We conclude
article 2226 does not violate the Fourteenth Amendment. We overrule the Engineer's third cross-point.




DISPOSITION OF THE CASE


 We reverse the judgment and remand this cause to the trial court for further
proceedings in accordance with this opinion. On remand, the trial court should determine the
amount of damages due the Engineer in light of our holdings that:

 1. the Engineer is entitled to compensation based on prices estimated by the
Engineer at the time he submitted plans for approval, not on 1979 price estimates;

 2. the Engineer is entitled only to the design-phase fees, not the construction-phase
fees;

 3. the Engineer is entitled to recover for Horseshoe Bay West plans and
specifications;

 4. the District is entitled to an offset for payments previously made to the Engineer
as part of the "creation fee";

 5. the District is entitled to an offset for overpayments to the Engineer for plans
for the Horseshoe Bay South mobile-home area; 

 6. the Engineer is entitled to prejudgment interest accrued from September 1979;
and 

 7. the Engineer is not entitled to attorney's fees.



 

 John Powers, Justice

[Before Justices Powers, Aboussie and Kidd]

Reversed and Remanded on Motion for Rehearing

Filed: August 12, 1992

[Publish]

1. In our discussion hereafter, we shall refer to Coulson and C.A.E., Inc. as "the
Engineer" and to Lake LBJ Municipal District as "the District."
2. In its supplemental brief, the District complains the verdict is "against the great weight
and preponderance of the evidence." Because the Engineer had the burden of obtaining jury
findings in his favor and did so, the District must argue that the evidence was insufficient to
support the verdict. The District would argue the evidence was against the great weight and
preponderance of the evidence if it were complaining of the jury's failure to find a fact on
which the District had the burden of proof. See William Powers, Jr. & Jack Ratliff, Another
Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515, 519 (1991).
3. Because we have held that 1979 cost estimates were improper, we need not address the
District's points of error fifteen and sixteen, which complain the evidence was insufficient to
support the jury's answer to question number three. Should the supreme court disagree with
our disposition of points of error ten through fourteen, however, we hold in the alternative that
the evidence was sufficient to support the jury's answer to question number three. Both
parties presented evidence as to the reasonableness of the Engineer's estimates of costs. 
Considering all the evidence presented on the issue, we cannot say the jury's verdict is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661
(Tex. 1951).
4. According to the original contract, the Engineer was to prepare plans and specifications
for projects within the initial 2335-acre area of the District. In 1972 the District annexed
Horseshoe Bay South, enlarging the District to 3010 acres. In 1973 the parties amended the
contract to authorize the Engineer to prepare plans and specifications for water, sewage and
drainage facilities "to serve all of the area of the District described in the metes and bounds
description" attached to the contract. The attachment described only the 3010-acre area.
5. We cannot determine from the District's brief whether it challenges the award of
prejudgment interest on all sums awarded in the judgment, or whether it challenges only those
sums awarded on the basis of the Engineer's estimates. We will address both possibilities.
6. The Engineer apparently provided in August 1979 an invoice demanding payment for his
services; the invoice was based on 1973 cost estimates. When the District refused to pay, the
Engineer submitted an invoice in December 1979 and based his estimates on 1979 prices.
7. The record reflects that the District and Chaney Construction Company entered into an
agreement whereby Chaney was to "commence and complete the construction of certain
improvements described as follows: Off-Site Water Distribution System to serve Horseshoe
Bay West." The agreement also provided that Chaney was to follow the plans and
specifications prepared by "Coulson & Associates Engineers, Inc."

8. The District cannot avoid liability for attorney's fees solely on the basis of claimed
governmental immunity because in its pleadings the District did not set forth governmental
immunity as an affirmative defense. See Davis v. City of San Antonio, 752 S.W.2d 518, 519
(Tex. 1988); County of El Paso v. Boy's Concessions, Inc., 772 S.W.2d 291, 293 (Tex. App.
1989, no writ). Even if the District waived any possible immunity defense it might have had,
however, the Engineer still may not recover attorney's fees unless a statute so provides. State
v. Bodisch, 775 S.W.2d 73, 75-76 (Tex. App. 1989, writ denied). 
9. Section 311.005 of the Code Construction Act, which does not apply to article 2226,
see Tex. Gov't Code Ann. § 311.002 (1988), defines "person" to include, among other
entities, a "government or governmental subdivision or agency." Id. § 311.005. The revisor's
note to section 38.001, however, says that "[section 38.001] does not use `person' in the
reference to an opposing party because the Code Construction Act definition of `person' is
broader than the source law meaning of the term." Tex. Civ. Prac. & Rem. Code Ann.
§ 38.001, revisor's note (2) (1988). This suggests that "person," as used in the source law,
article 2226, did not include governmental units.

10. Considerable controversy exists regarding exactly what constitutes a "municipal
corporation." See generally George D. Braden, The Constitution of the State of Texas: An
Annotated and Comparative Analysis 672-74 (1977) (discussing the confusion arising from the
imprecise use of "municipal corporation" in article XI of the Texas Constitution). The term
"municipal corporation" has great significance in the field of governmental immunity because
of the supreme court's landmark 1884 decision in City of Galveston v. Posnainsky, 62 Tex.
118 (1884). Posnainsky concluded that home-rule municipalities were not immune from
liability when they performed proprietary functions. Id. at 127-28. This Court, accordingly,
has stated that "[i]n the context of governmental immunity, we believe that the word
`municipal corporation' is a term of art properly limited to municipalities." Dillard v. Austin
Indep. Sch. Dist., 806 S.W.2d 589, 595 n.7 (Tex. App. 1991, writ denied). 

 The supreme court has stated that conservation and reclamation districts such as
the District "are not classed with municipal corporations, but are held to be political
subdivisions of the State, performing governmental functions, and standing upon the same
footing as counties and other political subdivisions established by law." Willacy County Water
Control & Improvement Dist. No. 1 v. Abendroth, 177 S.W.2d 936, 937 (Tex. 1944). The
supreme court adhered to this view in the face of a strong, scholarly dissent in Bennett v.
Brown County Water Improvement Dist. No. 1, 272 S.W.2d 498, 503 (Tex. 1954). 

 Exactly what constitutes a "municipal corporation" for nongovernmental
immunity purposes continues to vex the courts. If the District is not a municipal corporation,
however, it is clear that the Engineer cannot recover attorney's fees because no statutory
authority would exist for such an award. See Knebel, 518 S.W.2d at 795. 
11. Although governmental immunity is important as a framework in which to ascertain
legislative intent, it is not a valid basis for deciding this case. Rather, the dispositive issue is
whether the legislature provided statutory authority for the Engineer to recover attorney's fees. 
We therefore disagree with the analysis in Hill v. Ector County, 825 S.W.2d 180 (Tex. App.
1992, writ granted). In Hill, the court of appeals held that the county was liable for attorney's
fees because it failed to plead governmental immunity as a defense. Id. at 182. We believe
this misstates the issue; a county need not plead the governmental-immunity defense if no
statute affirmatively provides authority for recovery of attorney's fees.
12. In 1987 the legislature statutorily overruled Gates by providing that a municipality may
not be considered a corporation under a statute unless that statute expressly so provides. See
1987 Tex. Gen. Laws, ch. 342, § 1, at 1761 (Tex. Rev. Civ. Stat. Ann. art. 1269j-13, since
repealed and codified as amended at Tex. Loc. Gov't Code Ann. § 5.904 (Supp. 1992)).
13. See 1909 Tex. Gen. Laws, ch. 47, § 1, at 93 (repealed and codified as amended at Tex.
Rev. Civ. Stat. Ann. art. 2226, since repealed and codified as amended at Tex. Civ. Prac. &
Rem. Code Ann. 38.001 (Supp. 1992)).
14. Gates is not inconsistent with such a construction because a municipality performing a
proprietary function has no immunity.